case number 19-4025 Ramon Arangure v. Merrick Garland oral argument not to exceed 15 minutes per side Ms. Anguiano-Weed for the petitioner. Good morning your honors and may it please the court Nadia Anguiano-Weed for petitioner Ramon Yasso Arangure. I have reserved five minutes for rebuttal. I'd like to take a few seconds to thank the court very much for giving us the opportunity to present oral argument and to file supplemental briefs to answer the court's additional questions. This court must reverse because the BIA erred as a matter of law when it held that immigration judges have on-cabin discretion to determine the preclusive effect of their judgments. Whether a judgment is claim preclusive is a legal not discretionary question that turns into distinct but interrelated issues of law. Whether the judgment was final and whether it was an adjudication on the merits as that term was understood at common law and under the well-established common law doctrine that of dress judicata that this court already held congress unambiguously incorporated into the immigration and nationality act the IJ's September 13, 2016 written order was both a final judgment and a quintessential adjudication on the merits that is by definition and its very nature with prejudice and claim preclusive. Counsel, I have a question. I'm trying to figure out is it your position that the IJ did not have any discretion to dismiss without without prejudice in this case? That's correct your honor and that and we know that from the supreme court's decision decisions in both Semtec and Brownback and decades. Is there any point an without prejudice in a proceeding? Absolutely. I want to point out a couple of things about that. What happened here was not a dismissal. What happened here was a termination. When can an IJ dismiss without prejudice? At what point in the proceeding? Before reaching the full merits of the claim and then concluding that it that the HS's removal charge fails. What do you mean by before reaching the full merits of the claim? Does that mean once you get into a hearing you can't dismiss without prejudice? At what point are you are we talking about? I'm trying to understand the sequence of events. Absolutely. So for example, DHS cites a case where a and I will find it in my sheet here but where the IJ terminated proceedings without prejudice to DHS because its NTA was unartifully drafted. So essentially there was some sort of defect in the charging document, the notice to appear. But once there is an adjudication on the merits, so once the judge as happened in this case says applying substantive law which in this case was this court's ruling in shooty based on constitutional law and Michigan state law. Once that occurs and the judge says you lose DHS on this removal charge, it fails as a matter of law, the IJ has no discretion to turn around. Could its order have said you lose on this claim but I dismiss without prejudice in case you want to bring it under a different clause? I don't think so, your honor, because we know that the common law here applies based on this court's first decision in Mr. Yasso's case. And the rules to analyze judgments and those rules say to determine the preclusive effect of the judgment, we look at its effect without consideration of how the adjudicator may have designated that judgment. What do we do with this reg? There's a reg, it's 1003.39 that talks about the finality of decision and it says that the decision is not final until the time to appeal expires. So why isn't the proceeding still going on before the finality? I mean we follow the reg right before we would follow anything else and the reg says it's not final. A couple of points about that, based on this court's first decision in Yasso 1, we are looking to common law rules to determine preclusive effects of judgments and there are a slew of rules that tell us. Isn't that only when it's quiet? In other words, when it doesn't speak to it? Isn't that when we look to the common law and as I interpret, and Judge Nalbandian can correct me if I'm wrong, his question, he's saying it's not quiet on this because the reg speaks to it. The reg doesn't speak to it. What the reg says and two points that I want to make is that the reg doesn't speak to it but even if it did, here a judgment for Mr. Yasso is still compelled. And I'll take the second point first. Under that regulation, it says that the judgment becomes final upon the expiration of the time to appeal if no appeal is taken. And here DHS did not take an appeal. So even under its regulation, that judgment became final on October 13th, which was long before Mr. Yasso first appeared in his second proceeding to assert the defense of rest judicata. And again, under the common law. But they added the charges within the time period, didn't they? Isn't that the exact scenario that the Ninth Circuit, I understand it was unpublished, that resurrection, whatever case that was. But that's exactly on point, right? So as long as you add the charges, because you go back to the other reg that says that they can add charges during a and this one, if it's not final, I don't see how the proceeding wasn't going on. So it doesn't, as long as they get the charges in that time, aren't they okay then at that point under the addition of charges reg? I just want to be clear that the regulation speaks of finality, right? But the regulation doesn't speak to any broader rules about rest judicata. And under the common law, it is irrelevant when the second action was brought. All that matters is that the decision attains finality in the first decision, in the first case before a second proceeding is initiated. And this court has adhered to that common law rule literally now for centuries, as does the Restatement 14 state that. So there's nothing in the regulation in 1003.39 that says we are was filed. With respect to the other regulation that Your Honor mentioned, 1003.30 and the case what that regulation permits is for DHS to initiate, or excuse me, DHS to file new charges during an ongoing removal proceeding. Here there has never been any doubt. The reason why we're here is because we know there were two proceedings. And interpreting that regulation as allowing DHS to continue in perpetuity, the initial proceeding would nullify this court's decision, essentially in Mr. Yasso's first case. Essentially, DHS waits for a judgment adverse to it, loses, waits for the appeal period, files a new charge, loses, waits for the appeal period, files a new charge. And this court, frankly, in Mr. Yasso's first case, held that that was the precise situation that res judicata is intended to prevent. Can I ask you about a different provision of that reg? So 1003.10b says the order of the immigration judge shall direct the respondent's removal from the United States or the termination of proceedings or other such disposition of the cases may be appropriate. What does other such disposition of the case refer to? And what does it mean? I think, for example, I would point one issue that's been, or excuse me, litigated a lot recently, and that's the notion of administrative closure. And this court has an opinion in Serrano addressing that particular disposition. So it is another non-termination or non-removal disposition. But that part of the regulation, like administrative closure, has nothing to do with a with or without prejudice designation. Because for the fundamental reason that those terms don't exist in a vacuum, those terms with or without prejudice have all to do with res judicata. I'm sorry to interrupt you. Can I ask, what's the effect of, so I still don't understand how this procedure, the termination of proceedings, why do you go back into court after that? Is that routine? How does that work in your mind? It's not necessary for the parties to go back to court after there's been a written judgment. When the non-citizen is going to be ordered removed... So there's hearing, termination, and then go back to court, right? Is that what happened here? What happened here is that there was no hearing before the IJ issued his written order. So he issued his written order, terminating proceedings, served that on Mr. Yasso, and then also served that on DHS at the very beginning of the hearing. And the hearing was basically pro forma to say, I've rendered this judgment, Mr. Yasso, I have served it on you by and now I'm serving it on you, DHS attorney. Can I ask you one other question? Isn't the INA pretty clearly telling us that we need to help immigration judges dispose of cases quickly? And so shouldn't we allocate the power to the IJs to determine these things? And aren't we just in effect slowing down the process here? I'm out of time if I may answer your question. Two points about that, your honor. I think that to effectuate what your honor is expressing the INA says, that's what should in fact motivate, push DHS to bring not all theories of removability on all convictions at once, but the theories of removability based on the convictions it has put forward. And the other thing is, I go back to this court's decision in Mr. Yasso's first case, res judicata is, you know, a bit of a sacred doctrine that says, once the elements are met, it has to be applied. And the decision in the Supreme Court's decision in Moiti makes that very clear that there are no public policy exceptions. There are no simple justice exceptions to that. And in fact, the Supreme Court's decision in BME Hardware stressed that within the administrative context, it said, when preclusion elements apply, we apply it, even if it may result in bogging down a particular administrative system or unfairness to the party. Any other questions, Judge Nalbandian or Judge Bush? Okay, thank you very much, counsel. Counsel for the United States may proceed. Your Honor, may it please the Court, my name is Andrew O'Malley. I represent the Attorney General. After receiving the privilege of admission to the United States as a lawful permanent resident, Mr. Yasso committed and was convicted of first-degree home invasion. His conviction undisputedly puts Mr. Yasso within the group of non-citizens, those convicted of aggravated felonies, the removal of whom Congress has made a top priority. Mr. Yasso asked this country based on a technicality. This Court should reject Mr. Yasso's argument because the immigration judge had the discretion to terminate the proceedings without prejudice. When do you think, under 1003.30, when do you think, or when does the removal proceeding end? When does the proceeding end, Your Honor? Yeah. So the reg says that you can add charges at any time during deportation or removal proceedings. Right. When do they end? Is it when there's finality under 39 or is it some other point? I mean, it could be when the termination order came down. I assume that's what your friend on the other side would say. That would be an interesting interpretation, especially in this case, because the termination order came down before the proceeding actually ended. They went into immigration court and had the hearing. But that was the choice of the immigration judge, right? I mean, the immigration judge controls that. So is that right? Does it end when the termination order comes down? I mean, it's got to be consistent for every case, no matter what occurs afterwards. When are they completed? I believe I would say the immigration proceedings are completed. I think the Ninth Circuit's reasoning here is compelling that this is going to be completed when the decision becomes final and DHS can lodge additional charges at any time before that completion. The immigration judge, of course, could bring them back into proceedings. Why isn't the termination of the proceedings the final decision on the merits? I mean, we wouldn't allow the district court, after they've put on the termination, to go back once it's on appeal, right? Not once it's on appeal, no. And this wasn't on appeal here. This was within that period of time where DHS had time to figure out what it wanted to do here. And there's a process, right? You could have filed a motion to reopen. I mean, your friend on the other side lays out all kinds of things the government could have done here and didn't do. Why should we save you from the mess you've created? It's a fair point. DHS certainly could have filed a motion to reopen. They could have lodged an additional charge before the hearing, before the immigration judge, but they didn't. And it's clear here, when you look at how the proceeding unfolded, which was a bit messy, how the proceedings unfolded, it's clear that the immigration judge did not intend, had no intention of terminating proceedings such that DHS could not lodge an additional charge. Use the word terminated. It sounds pretty final to me. But again, at the hearing, the immigration judge made clear that the intention was that basis of removal is no longer valid under this court's decision and constitutional law, but the DHS is free to proceed. Now, maybe it wasn't exactly the right terminology, but there, well, technicalities are part of the law. I mean, formalities matter. What is the process by which you have a hearing after the termination comes? Does that happen pretty frequently? I'm puzzled by this. I'm puzzled by it myself, your honor. I'm not entirely sure that the immigration judge did that properly. I've never seen that before. I've seen a lot of these cases. It's clear that the immigration judge did not intend his order to have the effect that it is argued it has now. It's clear that I think if the immigration judge knew that we'd be here five or six years later, still arguing about the effect of that order, things would have unfolded differently. I think it's clear too that the immigration circumstances weren't doing so. I think in the common law, in the current federal common law, there's indication that context matters and where it's warranted, termination without prejudice is an available option. And I think that's particularly true here in the administrative context. So you're saying that I think formalities, I mean, I think his case ultimately does come down to a formality question of whether or not you needed to, the immigration judge needed to put without cause in the written order. And your argument is that he didn't need to do that. No, I do not believe the immigration judge needed to do that because it was expressed on the record. The board looked at this as this court asked the board to look at the facts of this case and determine what the effect was there. And the board said, and we think because he said on the record and there's precedent for this, the board can look at the record and determine the effect of Why would we ever review a post hoc rationalization by an immigration judge? Well, I think it matters what the intention was. I think it's important here to differentiate this case, this administrative case, this immigration case from other contexts and civil proceedings or litigation between personal litigants where race judicata applies with more formality. Not only is it applied less rigidly in the administrative proceedings, but specifically with respect to immigration. And there's good reason for that. And specifically with respect to criminal immigration. I think Justice Scalia said it best when he noted that in a deportation proceeding is not meant to punish somebody. And Mr. Yasso is not being punished for his crime. It's to hold him to the terms under which he was admitted to the United States. And his violation is an ongoing violation. So I mean, the flip side to that is this Justice Scalia and other justices have pointed out, we expect the government to follow the proper formalities before they take action that affects people in a negative way. And that's fair, Your Honor. And I think that there's enough safeguard here that that is a legitimate concern. And I think there are protections against that. There is the administrative review process. There is petition for review to the circuit courts of appeals. I think context matters. And I think it is inequitable here to say that the immigration judge has to be held to this order that was issued before the hearing, before the scheduled hearing to discuss the matter. But we all agree that's an odd thing. And that was the immigration judge's choice. I don't know why they're in such a rush to issue this order before a hearing. Didn't they hold it the same day? I thought they were both the same day. Like the holds a hearing. Why not hold the hearing then just wait? I don't care if you have the order pre-written, then put the order on. I don't know. I don't know the answer to that. I don't know why that that unfolded the way that it did. But again, what Mr. Yasso is asking is, and I think we know if that order had issued after the hearing, the immigration judge would have had a notation in there saying that it was without prejudice, because that's clearly what he intended to do. He stated that on the record. Why that happened? I don't know. But what Mr. Yasso is asking is I'm sorry to interrupt you. Didn't the government ask to have it without prejudice after the order went on? After the order was served upon them at the hearing, they said, I don't understand. I'm still examining whether or not there are additional bases for charging removal. I don't understand if this order is with or without prejudice. Can I go forward with more charges? And the immigration judge said, no, this order is without prejudice. You are in the position that you can lodge additional charges. And that's exactly what they did. So the issue of why didn't they? Can I ask you a question about, so how do you respond to the argument that this creates a system where you can, the government can lose, and then as long as it's within 30 days or whatever the time is to appeal, they can add new charges. They can lose, add new charges, lose, add new charges. It'll just go on for as long as the government wants to have it go on. It's a fair concern. I think it's a legitimate basis for undergirding the principles of race judicata. I don't think it's particularly compelling, particularly in this case. As I said, there's you did it many times? I imagine so at some point. I don't know where that would be. I don't know what the, how that would play out. It's certainly not the case here. I don't think there's any compelling argument that Mr. Yass was being harassed or that this was vexatious litigation. But again, if that, if that is a concern, there are levels of review to, to, to remedy that as well. And I think, I think all these arguments that the government is, they're sort of founded on the idea that the government is a bad actor and is out there to get people and harass people. And I don't find that particularly compelling. And it's certainly not compelling here. And when we have a situation where there was just a sea change in criminal law, as we all know, you know, in the mid 20 teens, and it's hard to figure out what to charge and what the basis of removability can possibly be. And it's just a, it's a strange unfolding of the it's a technicality. Again, I don't think it would have played out the same way. Had the immigration judge known we would be here so many years later, still talking about removability. How do you deal with this section 1003.37 a, which makes reference to a memorandum summarizing the oral decision shall be served on the parties. As I understand it, you're saying this oral decision was amending the earlier decision to make it without prejudice. And yet, it never made it into a memorandum, did it? I think that regulation deals more with the conclusion of full, full removal hearings, you'll see at the end of like, if somebody seeks asylum or something like that, they'll have a hearing, there'll be a little line in the in the record that says immigration judge issues oral decision. And then the memorandum of that decision comes out afterwards. That I don't think that happened here, because the immigration judge terminated before there was any sort of hearing. There was no oral decision in that sense. So you think that provision just simply didn't apply to this oral ruling? Uh, I'm not, I'm, you know, I'm not entirely sure how that, how that works out. To be honest with you. I don't, I don't think it's applicable to the situation presented here. I don't see it coming out of records in the situation presented here. But then again, can I ask about that? Because the, the regulation, it seemed to be mandated that oral decisions have to be summarized in a memo. And so is there, do you have a case or some exception in the reg itself that says except when they give post hoc rationalizations after they put the order on, then they can amend without actually amending the memo? I don't have a specific case on that. I'm not sure. I'm honestly, I'm not sure if that regulation specifically applies to this particular situation, where it's termination of removability right on, on the, on the charges and not after a full merits hearing. But I would point you in our brief, we do cite two cases where the, where the board has looked at the, at the, the text of the record, what happened at the hearing to determine what is meant by the, the immigration judge's decision, the memorandum of the decision, the immigration judge, or the board here. And specifically the board here has de novo review over this issue. I can look at the entire record as a whole to determine what happened and what the meaning of that decision is. And that's exactly what the board did here. And when they, when they, when it went back on remand, the board, let me ask you this, do you lose if that reg mandates that any oral decision to have a fact be put into a memo desk? Oh, I don't think so. Your honor. And there again, I think, I don't think it, I don't think that regulation states that it has to contain everything. I know the immigration judges can go in afterwards and make changes to their decisions. Would you agree that if, okay, so take order number one comes out, it says terminate. I don't think anyone objective looking at that would say it's without prejudice. So everyone's, so the whole fight is what is the effect of him coming in after the fact, he says, he comes in the U S says, look, we want it to be without prejudice because we may bring additional charges. And he says, okay, without prejudice, if this mandates that oral decisions be in writing after the fact of memo summarizing the oral decision has to be served on the parties. If that didn't occur, then how don't you lose? Well, then if that didn't occur, it didn't occur because there was no summary of the oral decision issued after the hearing, there was a decision issued prior. But that's my point. If the reg mandates you do that, you don't do that. Doesn't that, I mean, okay, let's say we look past the first formality. Do we look past is the U S asking us just to ignore every formality? No, I don't think so. I think it's the way that it wouldn't issue a decision. Is it your position then that the government could come in after issuing a decision and, and get the, get the immigration judge to say completely reverse himself of the earlier decision. And that would suffice to amend the earlier decision, even though there was no written decision memorializing the amendment. Yeah. I don't know if that, if that would be possible or not, it's certainly not the situation here. If that happened, there would be appeal available there and the importer can reverse that. It would not be a decision that, that, that would just allow DHS to continually move along. The board could say, no, that's not reasonable. You have to go back and redo that. Back to the, the issuing of the oral decision. There wasn't, there would be no reason to, after the hearing issue, a new decision where two days later, DHS just went ahead and lodged additional charges and the hearing continued on and they moved on to December where the, where the immigration judge then issued a decision again and said, this wasn't without prejudice. They've issued new charges and he's removable on this basis. Mr. O'Malley, I think your time is up. Any other questions? I'm sorry. My clock is not, is not on here. Oh, that's okay. I apologize. Your honor. You don't have to apologize Mr. or Judge Bush or Judge Nalbandian. Anything else? I got one question on that last point. So if you have new charges and the proceeding is ongoing and you have another hearing, okay, what's to prevent you from revisiting what was originally resolved on the original charges? Let's say it's not a, not a clear cut legal winner, you know, like we've been talking about, but if the proceeding is ongoing, can you just go back and keep litigating? I mean, is anything final if you don't appeal it, but the proceeding is open? I would think so. Yeah. I would think that the immigration judge could reconsider that decision. And if the proceeding is still ongoing. So you could put in new evidence or whatever, based on the original charges. I mean, this is what your friend on the other side or argument as you keep going and going. And now you're saying, I mean, that finality in, in 1,003.3 has to mean something. I assume like once you decide not to appeal the first decision, even if you file new charges, you're cut off with respect to the first decision, I assume, right? You know, probably. I mean, unless you make a motion to reo. I mean, you could, I'm not going to hold you to it. I'm just saying that I guess you could make a motion to reopen or something. You'd have to do some other formality. I assume it's just an odd, it's an odd progression because there's no reason for DHS to go and appeal that decision. When the immigration judge says, told them you can go ahead and charge. And they went ahead and charged. There's no reason for them to go after that and appeal that decision so that it doesn't become final to preclude the would, I think, except I think that the proceeding just continues forward because the DHS lodged additional charges, right? So that, that order becomes final and appealable at the very conclusion of the, of the proceedings, which would be when DHS ultimately approved on the, on the new charge of removability. Right. And then it becomes final and appealable up to the board, which is what happened. Okay. All right. Yeah. Thank you very much. You, you may proceed. You have five minutes. Thank you. I just, the clock hasn't restarted. Thanks very much. Your honors. There's been a lot of focus in this conversation about mere technicalities. But I, I am really compelled here to follow up on something that justice, the par said, technicality sometimes is how the law constrains power. And I'm really compelled to reference judge justice Gorsuch's recent opinion in these Chavez, right? Where he says, if men must turn square corners with when they deal with the It cannot be too much to expect that the government turns square corners when it deals with them. And here we have the system of regulations that applies as, as your honors have, have focused on the regulation that would have required a summarizing memorandum. If there was another decision amending the first one, and I don't have the site in front of me, but there are a slew of six circuit decision that say they're a fundamental principle of administrative law is that both parties follow the regulations. And then in particular, the agency follows the regulations that it promulgates. Now I want to focus on three additional points that I think have been, have gotten a lot of play time. One, my friend on the other side, you mentioned that we're here arguing that the government is a bad actor and there is no such argument. What we're here arguing is that res judicata, which this court held applies, applies on the fundamental principle that the parties have a full and fair opportunity to litigate. And that's what happened here. After this court's Judy decision, there were two full months where the government could have availed itself of that regulation, 1,003.30 and lodged new charges. There was a month before the hearing where the IJ sent a notice saying, I want filings 10 days before this hearing, nothing occurred. And that's not even to focus on the full year, if I'm frank, where DHS could have litigated this charge. And the other point that has, and then it didn't, and I keep going back to Moita because I think it's such an important decision where it says that the doctrine of res judicata is not a mere matter of practice or procedure. It is this fundamental principle that helps litigants behave a certain way and then helps judges also adjudicate what's before them. Focus on the judge's intent. Moita again says, quote, the doctrine of res judicata serves vital public interests beyond any individual judges ad hoc determination of the equities in the particular case. Once the elements are met, which I think we can all agree they have been met here, the judge cannot, on the other hand, say in this particular case, and may I point out respectfully for no identified reason, I determined that it is equitable to give this party another bite at the apple. I keep going back. If the district court could surely clarify its ruling before it puts on judgment and that judgment is appealed, why shouldn't we allow immigration judges to do the same? There is no authority, Justice, excuse me, Judge Tapar, that I have been able to identify where a district court ruled on the full merits of a claim and then nevertheless says, but you get to litigate again. There are two particular circumstances where that comes up. One is where, for example, the party, the plaintiff during the first proceeding, it was determined that the plaintiff didn't have a full and fair opportunity to litigate. And then the judge said, I am allowing you to split the claim. The Supreme Court's decision in DeGrande, which this court cited in Mr. Yasso's first case, is a perfect example of that. The court said, I don't have enough time to fully adjudicate this case, so it's without prejudice. The second instance where that is allowed is in the context of non-suits. And the common law is, again, very clear that if a plaintiff wants a non-suit, that must be before the judge adjudicates the full merits of the claim. And that's restatement section 20, which this court again cited to. And so there is nothing here, and then going back to Brownback, that says we somehow carve out a separate exception to res judicata, that we look to see there was a full adjudication on the merits, but then we're nevertheless going to turn around and say, for no reason, you can come again. And the last point I'd like to briefly make is this notion of the appeal period, and whether somehow res judicata is suspended during the appeal period. And that is a very clear no, again, on the rules that this court has adhered to. And the Supreme Court, a 1926 case, excuse me, a 1943 case by this court called Refior, stressed what it called the well-settled rule, and I quote, that a judgment or decree will operate as res judicata, not with standing an appeal. May I finish this thought? You may. Thank you. So even if DHS had in fact appealed, there is nothing here that says res judicata is suspended because DHS sought to appeal. And with that... Go ahead, I'm sorry. With that, Your Honor, I'd just like to conclude to ask the court to grant Mr. Yasso's petition for review and reverse the BIA's decision. Judge Bush, any further questions? No. Judge Nelbandian? Counsel, I want to thank you both. I know we asked for extra briefing in this case. We appreciate you doing so. Am I pronouncing your name right? Is it Ms. Angiana Wade? Sorry about that. My name gets butchered often, and I hate butchering anyone else's name. But I want to thank you very much. I know you are doing this, I think, pro bono. I know you were appointed, and we are very grateful that you would take this on and do such an excellent job. Not once, not have the clinic do an excellent job once, but twice. And we are grateful, and we hope you will come back to the Sixth Circuit and take many more appointments.